IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| DR. TYMESHA ÁNTONIA PENDLETON,<br><br>               Plaintiff<br><br>vs.<br><br>DUKE UNIVERSITY,<br><br>               Defendant. | **COMPLAINT**<br><br>Civil Action No.: _____<br><br>*Jury Trial Demanded* |

COMES NOW Plaintiff Tymesha "Ty" Ántonia Pendleton, Psy.D. ("Dr. Pendleton"), by and through her attorneys at The Fuller Law Firm, P.C., as and for her Complaint against Defendant hereby states and alleges the following, upon information and belief:

**NATURE OF ACTION**

1. This is an action for damages arising from Defendant's discrimination against Dr. Pendleton on the basis of race and retaliation, in violation of: (a) Title VII of the Civil Rights Act of 1964; (b) 42 U.S.C. § 1981; and (c) the public policy of North Carolina, as articulated in N.C. Gen. Stat. § 143-422.2.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over the subject matter and persons in this action under 28 U.S.C. § 1331, in that this action arises under the Constitution and laws of the United States (federal question), and venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1), in that

Defendant resides herein and a substantial part of the events or omissions giving rise to the claims in this action occurred herein.

## PARTIES

3. Dr. Pendleton is an African American woman who resides in Alamance County, North Carolina, and is a current employee of Duke University.

4. Defendant Duke University ("the University") is a private corporation organized, existing, and operating under the laws of the State of North Carolina, and is domiciled in Durham County, North Carolina. The University is Dr. Pendleton's current employer, and is also a recipient of federal funds and a contractor or subcontractor of the United States Government, including the Department of Defense and other such federal agencies, having federal contracts totaling well over $1 million.

## FACTUAL BACKGROUND

5. On or about February 1, 2022, Dr. Pendleton commenced her employment at Duke University as a classified staff (non-faculty) member of Counseling & Psychological Services ("Duke CAPS"). Lisa Adams, the University's Director of CAPS, was her direct supervisor.

6. During her employment, Dr. Pendleton has faced a systematic pattern of discrimination on the basis of race, workplace harassment, and retaliation orchestrated by Adams and her supporters.

7. Dr. Pendleton is the only African American psychologist on her team, and she has endured a constant stream of hostility and intimidation which has caused significant emotional distress and impeded her professional advancement and development.

8. Dr. Pendleton has been forced to endure a culture characterized by toxicity and unmitigated instances of harassment, sustained under the auspices of Adams' leadership. All of

this has culminated in the false and injurious filing of a complaint against Dr. Pendleton with the North Carolina Psychology Board, seeking to punish her and destroy her professional career.

9. Ever since Dr. Pendleton first voiced her opposition to Adams' remarks about mistreatment of her and other BIPOC employees, she has consistently encountered retaliation, including barriers preventing her from being promoted to more significant, leadership positions at the University, despite her repeated applications for and expressions of interest in specific positions that became available.

10. These failures to promote have persisted, in that Caucasian employees who joined Duke CAPS after Dr. Pendleton were being granted opportunities for promotion and advancement.

11. The fear, nervousness, and isolation brought about by the discriminatory and retaliatory behavior has significantly affected Dr. Pendleton's mental health and overall wellness, and, because of certain aggressive behavior by Jeffrey Sapyta, a University employee, (and others) has caused her to be concerned for her personal and physical safety. Despite utilizing coping strategies and seeking assistance from colleagues and therapy, the lasting scars, whether financial, emotional, or psychological, remain deeply ingrained.

12. The conduct by the University described herein has occurred on a continual basis.

13. Dr. Pendleton repeatedly wrote to and reported the instances of discrimination, the hostile working environment, retaliation, failures to promote, and disparate treatment to the Duke University Office of Institutional Equity and the Duke University Department of Human Resources. However, the University never took any action to investigate or address her reports and complaints.

14. Employees who have contributed to the discrimination and retaliation include Lisa Adams, Jeffrey Sapyta, Carolyn Reynolds, Melissa Carlin, Kate Davies, Catherine Goyeneche, and Gwen Lloyd.

Specific Nature of Discriminatory and Retaliation Conduct

15. From the outset, Adams convened impromptu meetings, often asserting her authority and criticizing the existing staff environment as "toxic." Specifically, she frequently criticized BIPOC subordinates, questioning their qualifications and making derogatory remarks about their age, nationality, and competence.

16. Adams often labeled BIPOC staff as "trouble," "challenging," or "problematic" and accused them of being lazy and disinterested in their work.

17. Adams mentioned that CAPS staff opposed her hiring because she was a "white woman" and often stated that she had authority from her supervisor, Dr. John Blackshear, Associate Vice President of Student Affairs and Dean of Students, to terminate department employees who did not align with her vision. These comments created a divisive and discriminatory work atmosphere.

18. In June 2022, a new professional advancement opportunity as the "Assistant Director of Training" was presented to Dr. Pendleton.

19. On July 7, 2022, a meeting was held between Dr. Blackshear, Adams, and Dr. Pendleton (which Adams organized), the main topic of discussion revolved around her potential role as Assistant Director of Training and as Graduate Student Coordinator. Dr. Blackshear approved Dr. Pendleton's promotion to Assistant Director of Training. However, shortly afterward, Adams sabotaged and blocked this promotion.

20. On July 27, 2022, while visiting Adams' office to address a client case assignment involving a coworker about whom Adams had made negative comments regarding the coworker's clinical abilities, Dr. Pendleton conveyed her overall unease regarding the negative comments openly shared by Adams, targeting BIPOC coworkers, including her supervisor, Dr. Blackshear, and his wife (who is Caucasian) since her inception at Duke CAPS.

21. Adams demanded to know specific examples of her previous comments regarding BIPOC coworkers that were negative, and Dr. Pendleton recalled specific comments.

22. However, Adams interrupted Dr. Pendleton and expressed her belief that Dr. Pendleton was "calling [her] 'a racist'." Adams said she was "sorry" that Dr. Pendleton "couldn't handle [her]" comments about staff and that she just "won't come to [Dr. Pendleton] anymore since [Dr. Pendleton was] affected by what [she, Adams] said."

23. Adams was plainly upset about Dr. Pendleton's opposition to her racially derogatory remarks. Adams then made several unfounded accusations against Dr. Pendleton, including claims of being "emotionally unstable" and "immature."

24. Two days later, Dr. Pendleton inquired about when her promotion that Dr. Blackshear had approved was going to occur. Adams replied that Dr. Pendleton was no longer considered eligible for the promotion. This was plainly in retaliation for Dr. Pendleton's opposition to Adams' discriminatory behavior.

25. The retaliation escalated when Adams began excluding Dr. Pendleton from significant meetings and job responsibilities. This exclusion hindered Dr. Pendleton's ability to perform her duties effectively and impacted her professional growth.

26. The retaliation included Adams and Adams' enablers manipulating Dr. Pendleton's direct-service hours and performance data to negatively portray her work performance. This

manipulation was used to justify placing Dr. Pendleton on a Performance Improvement Plan (PIP) without prior warning or individual performance discussions in December 2022.

27. Dr. Pendleton continued to face increasing hostility from Adams and her aligned staff members in 2023, including administrative assistants and other staff closely linked to Adams engaged in actions that sabotaged her work output and created a toxic environment.

28. Dr. Pendleton made several attempts to address the discrimination and retaliation issues with the University's Human Resources Department and the Office of Institutional Equity (OIE). This included documenting interactions, corresponding with HR representatives, including Jennifer Kelly, and seeking clarification on her rights and the processes for filing formal complaints. This continued through and including March 2023.

29. Despite Dr. Pendleton's reporting of the continuous abuse, nothing ever was done about it and the problematic behavior of Adams and her aligned staff members persisted, creating a hostile work environment.

30. On May 2, 2023, a formal statement was issued by James Mason regarding OIE's decision not to initiate an investigation into Dr. Pendleton's reports surrounding workplace retaliation.

31. During her annual performance review in June 2023, Dr. Pendleton again referred to her opposition to discriminatory and retaliatory behavior, and she informed Adams about her knowledge of other coworkers in Duke CAPS who were privy to and revealing Dr. Pendleton's personal work-related information.

32. Thereafter, Adams appeared to delegate her discriminatory behavior to Jeff Saptya.

33. During Dr. Pendleton's initial meeting with him on June 21, 2023, Saptya made inappropriate remarks regarding male genitalia that made Dr. Pendleton instantly uncomfortable, hindering the productivity of their conversation.

34. At a subsequent Training Committee meeting on July 20, 2023, Saptya made other comments to which Dr. Pendleton objected, particularly since they concerned the optics of the racial and gender dynamics.

35. In response, Saptya raised his voice and berated Dr. Pendleton in front of the other members of the Training Committee.

36. Acknowledging Saptya's hostile reaction, false accusations, and public disclosure of inside knowledge about her job performance, Dr. Pendleton reported her concerns to HR.

37. On August 28, 2023, Dr. Pendleton sent an email to Saptya, Dr. Evans, and Adams complaining of these encounters.

38. Adams failed to intervene.

39. On September 1, 2023, Saptya escalated his retaliation by threatening to lodge a complaint against Dr. Pendleton with the North Carolina Psychology Board.

40. Meanwhile, Dr. Pendleton was denied several promotions she requested and for which she was not considered in August 2023, January 2024 and March 2024, including: (1) Interim Associate Director of Training Programs, (2) Site Supervisor/Coordinator for the training program, and (3) Staff Psychologist - Training Director, among others.

41. Recently, the discriminatory and retaliatory behavior culminated on July 5, 2024, when Saptya filed a professional licensing complaint with the North Carolina Psychology Board in connection with Dr. Pendleton's opposition to his discriminatory behavior.

42. Weary and dispirited by the discrimination and retaliation directed toward her, on or about August 5, 2024, Dr. Pendleton filed a charge of discrimination against the University with the U.S. Equal Employment Opportunity Commission, and was issued a Notice of Right to Sue by the EEOC on September 27, 2024.

43. Consequently, Dr. Pendleton now has exhausted all her administrative remedies.

44. Thereafter, on December 26, 2024, Dr. Pendleton entered into a Tolling Agreement with the University with respect to her claims in this action. The Tolling Agreement expires on January 27, 2025.

45. Moreover, it appears that there may be an arbitration agreement between Dr. Pendleton and the University. However, upon information and belief, as a condition of its federal contracts, the University has agreed not to enforce such arbitration agreement. Further, relevant federal statutory and regulatory law, Presidential Executive Orders, and the University's status as a federal contractor preclude enforcement of any such arbitration agreement in this matter.

46. Dr. Pendleton now timely commences this action.

## COUNT I

*[Violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981– Discrimination and Retaliation]*

47. Dr. Pendleton repeats and re-alleges paragraphs 1-46 of this Complaint, as if fully set forth and incorporated herein.

48. Dr. Pendleton is a member of a protected class (African American).

49. By the actions described herein, Defendant has subjected Dr. Pendleton to discrimination on the basis of race, in violation of federal law, Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, and state law and policy.

50. Defendant subjected Dr. Pendleton to disparate treatment with respect to the terms and conditions of her employment on account of race, and was subjected to a continuing violation.

51. Further, Defendant wrongfully failed on multiple occasions to promote Dr. Pendleton.

52. At all times, Dr. Pendleton performed her job and met Defendant's legitimate performance expectations.

53. When Dr. Pendleton complained about Defendant's discriminatory behavior, Defendant retaliated against her.

54. Dr. Pendleton's complaints constituted protected activity.

55. Defendant took adverse employment action against Dr. Pendleton as a direct and proximate result of her complaints about racially discriminatory treatment.

56. Consequently, Defendant is liable for violating Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

57. By reason of such culpability, Dr. Pendleton has suffered actual harm and is entitled to recover compensatory damages, including financial losses, loss of earnings and benefits, loss of future earning capacity, loss of reputation, past and future mental and emotional distress, all in an amount exceeding $10,000.

58. Further, Defendant's conduct was willful, wanton, intentional, and in total disregard of Dr. Pendleton's rights, such that Defendant is liable for punitive damages in an amount exceeding $10,000.

59. Dr. Pendleton seeks recompense in accordance with the Prayer for Relief below.

## **PRAYER FOR RELIEF**

WHEREFORE, Dr. Pendleton prays for judgment in her favor and against Defendant on each and every count in this Complaint for harm suffered due to the aforesaid discrimination,

retaliation, violation of public policy, and statutory violations, for which she seeks the following relief:

    A.    An award of compensatory damages, including damages for mental and emotional distress, reputational harm, and financial losses, in amount exceeding $10,000;

    B.    An award of economic damages for lost wages and benefits, including back pay and benefits, front pay and benefits, and loss of earning capacity, in an amount exceeding $10,000;

    C.    An award of consequential damages;

    D.    An award of pre- and post-judgment interest;

    E.    Injunctive relief, in that Dr. Pendleton has been irrevocably injured by the discriminatory actions complained of herein. The injuries that Dr. Pendleton suffered should be enjoined by this Court. Dr. Pendleton has no other adequate or complete remedy other than this proceeding to have the actions and practices of Defendant, as complained of herein, remedied;

    F.    Equitable relief, including:

        i.    Ordering Defendant to take appropriate corrective action to stop and prevent racial discrimination and retaliation in the workplace;

        ii.    Ordering Defendant to undergo anti-discrimination and anti-retaliation training;

        iii.    Ordering Defendant to engage a research organization to assess the effectiveness of its anti-discrimination and anti-retaliation training; and

        iv.    Ordering Defendant to pay the attorneys' fees and disbursements of Dr. Pendleton's counsel to oversee and enforce the equitable remedies identified above;

G. An award of attorney's fees and the costs and disbursements of this lawsuit;

H. An award of punitive damages; and

I. Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Dr. Pendleton hereby requests a trial by jury of all issues in this action.

Dated: January 27, 2025

Respectfully submitted,

s/ Trevor M. Fuller
N.C. Bar No. 27044
THE FULLER LAW FIRM, P.C.
307 W. Tremont Avenue, Suite 200
Charlotte, North Carolina 28203
Telephone: (704) 659-5600
Email: tmfuller@thefullerlawfirm.com

*Attorneys for Plaintiff Dr. Pendleton*